**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP, FKA COUNTRYWIDE HOME LOANS SERVICING, LP, <br><br> Plaintiff, <br> vs. <br><br> BOULDER CREEK HOMEOWNERS ASSOCIATION, *et al.*, <br><br> Defendants, | Case No.: 2:16-cv-00572-GMN-PAL <br><br> **ORDER** |

Pending before the Court is the Motion for Summary judgment, (ECF No. 55), filed by Plaintiff Bank of America, N.A. ("Plaintiff"). Defendants SFR Investments Pool 1, LLC ("SFR") and Boulder Creek Homeowners Association ("HOA") filed Responses, (ECF Nos. 57, 58), and Plaintiff filed a Reply, (ECF No. 61). Also before the Court is SFR's Motion for Summary Judgment, (ECF No. 54). Plaintiff filed a Response, (ECF No. 56), and SFR filed a Reply, (ECF No. 62).[1] For the reasons stated herein, Plaintiff's Motion for Summary Judgment is **GRANTED**.

**I.  BACKGROUND**

This case arises from the non-judicial foreclosure on real property located at 964 San Carlos Creek Lane, Henderson, Nevada 89002 (the "Property"). (*See* Deed of Trust, Ex. A to Pl.'s MSJ, ECF No. 55-1). On or about September 15, 2009, Petelo Vake and Alisi Vake ("Borrowers") refinanced the Property with a loan in the amount of $290,515.00, secured by a

---

[1] SFR also filed a Motion to Dismiss, (ECF No. 48), based on Plaintiff's failure to join a necessary party. The Court addresses this issue *infra*.

dead of trust (the "DOT"). (*Id.*). Plaintiff gained beneficial interest in the DOT through an assignment recorded on July 13, 2011. (*See* Assignment, Ex. C to Pl.'s MSJ, ECF No. 55-3); (Merger, Ex. D to Pl.'s MSJ, ECF No. 55-4). Upon Borrowers' failure to stay current on their payment obligations, Nevada Association Services ("NAS"), on behalf of HOA, initiated foreclosure proceedings by recording a notice of delinquent assessment lien and a subsequent notice of default and election to sell. (*See* Notice of Delinquent Assessment Lien, Ex. J to Pl.'s MSJ, ECF No. 55-10).

On May 22, 2014, law firm Miles, Bauer, Bergstrom & Winters LLP ("Miles Bauer"), on behalf of Plaintiff, sent a letter to NAS requesting the amount of HOA's superpriority lien. (*See* Request for Accounting ¶ 6, Ex. 1 to Miles Aff., ECF No. 55-12). NAS responded with a ledger detailing the amount of HOA's lien. (*See* Statement of Account, Ex. 2 to Miles Aff.). Miles Bauer, on behalf of BANA, subsequently delivered a check to NAS for $315.00 based on the provided ledger, purportedly representing nine months' worth of HOA assessments. (*See* Tender Letter, Ex. 3 to Miles Aff.).

Notwithstanding the alleged tender, NAS proceeded with the foreclosure by recording a notice of foreclosure sale and subsequently foreclosing on the Property. (*See* Foreclosure Deed, Ex. M to Pl.'s MSJ, ECF No. 69-13). On July 29, 2014, SFR recorded a foreclosure deed, stating that it purchased the Property for $36,000. (*Id.*).

Plaintiff filed the instant Complaint on March 15, 2016, asserting the following causes of action arising from the foreclosure and subsequent sale of the Property: (1) quiet title; (2) breach of NRS 116.1113; (3) wrongful foreclosure; and (4) injunctive relief. (*See* Compl. ¶¶ 32–85, ECF No. 1).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth; it is to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *Id.* at 249–50.

## III. DISCUSSION

Plaintiff moves for summary judgment on its quiet title and declaratory relief claims, asserting that *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296, 198 L.Ed.2d 726 (2017), compels the Court to hold that the HOA foreclosure sale did not extinguish Plaintiff's DOT. (Pl.'s MSJ 9:11–14:6, ECF No. 55). Plaintiff also argues that summary judgment is warranted because Plaintiff properly tendered the superpriority HOA lien prior to the foreclosure sale, thus eliminating the superpriority status of the HOA's lien. (*Id.* 6:10–9:10). Additionally, Plaintiff argues that NRS 116 is preempted because the loan is FHA insured. (*Id.* 23:19–26:2).

SFR conversely seeks summary judgment on the basis that *Bourne Valley* is not controlling authority, and Plaintiff is otherwise not entitled to an equitable remedy. (SFR's MSJ 6:20–12:25, ECF No. 54). SFR also opposes Plaintiff's Motion by arguing, *inter alia*, that Plaintiff's purported tender did not satisfy HOA's superpriority lien, Plaintiff's tender contained impermissible conditions rendering it invalid, Plaintiff lacks standing, and preemption does not apply. (*See* SFR's Resp. 4:23–30:17, ECF No. 58). The Court's discussion below first addresses the constitutionality of the foreclosure sale.

### A. Constitutionality of the Foreclosure

In *Bourne Valley,* the Ninth Circuit held that NRS 116.3116's notice provisions violated lenders' due process rights because the scheme "shifted the burden of ensuring adequate notice from the foreclosing homeowners' association to a mortgage lender." *Bourne Valley*, 832 F.3d at 1159. The Ninth Circuit, interpreting Nevada law, declined to embrace the appellant's argument that NRS 107.090, read into NRS 116.31168(1), mandates that HOAs provide notice to lenders even absent a request. *Id.* Accordingly, the absence of mandatory notice provisions rendered the statutory scheme facially unconstitutional. *Id.* at 1158–60.

*Bourne Valley*'s construction of Nevada law is "only binding in the absence of any subsequent indication from the [Nevada] courts that [the Ninth Circuit's] interpretation was incorrect." *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983). "[W]here the reasoning or theory of . . . prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, [a court] should consider itself bound by the later controlling authority. . . ." *Miller v. Gammie*, 335 F.3d 889, 892–893 (9th Cir. 2003). "[A] [s]tate's highest court is the final judicial arbiter of the meaning of state statutes." *Sass v. California Bd. of Prison Terms*, 461 F.3d 1123, 1129 (9th Cir. 2006) (citing *Gurley v. Rhoden*, 421 U.S. 200, 208 (1975) ); *see also Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982)

("State courts have the final authority to interpret, and, where they see fit, to reinterpret the states' legislation.").

In *SFR Invs. Pool 1, LLC v. Bank of New York Mellon*, the Nevada Supreme Court expressly declined to follow *Bourne Valley* and held that NRS 107.090 is incorporated into NRS 116.31168, thus requiring that HOAs "provide foreclosure notices to all holders of subordinate interests, even when such persons or entities did not request notice." 422 P.3d 1248, 1253 (Nev. 2018) (en banc). The Nevada Supreme Court's holding is clearly irreconcilable with the Ninth Circuit's finding of unconstitutionality because the Ninth Circuit premised its conclusion on NRS Chapter 116's lack of mandatory notice provisions. Because the Nevada Supreme Court has since interpreted NRS Chapter 116 as mandating notice, the rationale underlying the *Bourne Valley* decision no longer finds support under Nevada law. *See Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (recognizing that cases are "clearly irreconcilable" where the "relevant court of last resort ... undercut[s] the theory or reasoning underlying the prior circuit precedent."); *see e.g*, *Toghill v. Clarke*, 877 F.3d 547, 556–60 (4th Cir. 2017). Because the Nevada Supreme Court has final say on the meaning of Nevada statutes, *Bourne Valley* is no longer controlling authority with respect to NRS 116.3116's notice provisions and, consequently, its finding of facial unconstitutionality. Accordingly, to the extent Plaintiff, in the instant Motion, seeks to prevail based upon *Bourne Valley*, the Court rejects this theory.

**B.     Tender of the Superpriority Portion of HOA's Lien**

Plaintiff claims that its tender of the superpriority amount of the HOA's lien to NAS renders the foreclosure sale invalid. (Pl.'s MSJ 6:10–9:10). Conversely, SFR argues that the Court must disregard Plaintiff's evidence of tender because such evidence is inadmissible under the Federal Rules of Evidence and improper under the Federal Rules of Civil Procedure. (SFR's Resp. 6:14–9:14). Specifically, SFR moves to exclude Plaintiff's exhibits and affidavit

purporting to demonstrate evidence of tender (collectively the "Miles Bauer Records") on the grounds that the exhibits have not been properly authenticated. (*Id.*).

### 1. Admissibility of the Miles Bauer Records

SFR argues that Doug Miles' affidavit (the "Miles Affidavit") does not properly authenticate the Miles Bauer Records because Miles cannot testify about his personal knowledge of how records were kept, whether he or Miles Bauer maintained control of the electronic records from the time they were produced, and whether the documents were definitively not altered. (SFR's Resp. 6:15–7:7). Similarly, SFR argues that Miles lacks personal knowledge of both the methods of delivery for tender letters and the actual delivery of the check to NAS. (*Id.* 8:3–12).

Under Federal Rule of Evidence 901(a), "[t]he foundational 'requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Tank*, 200 F.3d 627, 630 (9th Cir. 2000) (quoting Fed. R. Evid. 901(a)). A party seeking admission of evidence need only establish a "prima facie showing of authenticity, as '[t]he rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" *Id.* (quoting *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir.1985)). Once this burden is met, questions concerning the accuracy or completeness of a given record affect its weight rather than its admissibility. *Id.*; *see also United States v. Catabran*, 836 F.2d 453, 458 (9th Cir. 1988).

"[A] proper foundation need not be established through personal knowledge but can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). Rule 902(11) provides that "a domestic record that meets the requirements of Rule 803(6)(A)–(C)" is deemed to be self-authenticating. Fed. R. Civ. P. 902(11). In turn, Rule 803(6) provides that business records are admissible when two

foundational facts are shown: "(1) the writing is made or transmitted by a person with knowledge at or near the time of the incident recorded, and (2) the record is kept in the course of regularly conducted business activity." *Sea-Land Serv., Inc. v. Lozen Int'l, LLC.*, 285 F.3d 808, 819 (9th Cir. 2002) (quoting *United States v. Miller*, 771 F.2d 1219, 1237 (9th Cir. 1985)); *see also* Fed. R. Evid. 803(6).

Here, the Court is satisfied that the Miles Affidavit sufficiently authenticates the Miles Bauer Records. The Miles Affidavit provides that Miles is a managing partner with the firm Miles, Bauer, Bergstrom & Winters, LLP, which was the firm hired to tender payment of the Property's superpriority lien; and that Miles personally cross-referenced the information in the affidavit and exhibits with his firm's records to confirm the accuracy of the documents. (*See* Miles Aff., Ex. L to Pl.'s MSJ). Miles states he is familiar with Miles Bauer's record-keeping policies and that his job responsibilities require him to be familiar with records in connection with the tender payments to HOA in this case. (*Id.* ¶ 3). Additionally, each attached exhibit is identified in Miles' sworn affidavit. (*Id.* ¶¶ 6–8). This is sufficient for a reasonable juror to find that the Miles Bauer Records are what Miles claims them to be.

The Court rejects SFR's contention that Miles' lack of personal knowledge precludes admission of the Affidavit. Rule 803(6) allows testimony from a "qualified witness," which has been "broadly interpreted to require only that the witness understand the record-keeping system." *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015) (quoting *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990)). That is, to meet the Ninth Circuit's "low bar" for serving as a "qualified witness," a witness need only have knowledge of the record-keeping procedures; a witness need not establish how or when a particular record was maintained. *See id*. ("There is no requirement that she or Wells Fargo establish when and by whom the documents were prepared."); *Ray*, 930 F.2d at 1370 ("[A]lthough Webber was not the custodian of Ray's welfare records, she was a 'qualified witness' to establish that Rule

803(6)'s foundational requirements had been met."); *United States v. Basey*, 613 F.2d 198, 201 n.1 (9th Cir. 1979) ("It is unimportant under Fed. R. Evid. 803(6) that the custodian did not herself record the information or know who recorded the information."). Moreover, where the custodial entity has a "substantial interest in the accuracy of the records," it does not matter that the records originated from another source. *See MRT Const. Inc. v. Hardrives, Inc.*, 158 F.3d 478, 483 (9th Cir. 1998); *United States v. Childs*, 5 F.3d 1328, 1334 n.3 (9th Cir. 1993) (distinguishing prior precedent and finding that "the auto dealers in this case did rely on [a freight bill prepared by a different company] at issue and had a substantial interest in their accuracy.")); *Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 738 n.1 (9th Cir. 2016) ("It does not matter whether the records Li reviewed may have been given to her company by a third party; they may be admitted as the business records of her company even if they were generated elsewhere."); *see also United States v. Machinski*, No. 11-cv-01118-LB, 2017 WL 2617904, at *6 (N.D. Cal. June 16, 2017), *aff'd*, No. 17-16266, 2018 WL 6649595 (9th Cir. Dec. 18, 2018).

SFR cites *In re Vee Vinhee*, 336 B.R. 437 (B.A.P 9th Cir. 2005), for the proposition that electronic records must be authenticated by an affiant who testifies to the accuracy of the documents, identifies the chain of custody, and explains the circumstances of the document's preservation. (SFR's Resp. 17:25–11, ECF No. 82). To the extent *In re Vee Vinhee* may serve as persuasive authority, the Court is unconvinced. *See In re Zimmer*, 313 F.3d 1220, 1225 n.3 (9th Cir. 2002) (stating "the binding nature of Bankruptcy Appellate Panel decisions" is "an open question in this circuit"); *In re Arnold*, 471 B.R. 578, 590 (Bankr. C.D. Cal. 2012); *In re Grant*, 423 B.R. 320, 321 (Bankr. S.D. Cal. 2010). It appears that the authentication requirements for business records in that case cannot be reconciled with more recent authority confirming the relatively lax requirements for admitting evidence under FRE 803(6). *See, e.g.*, *ABS Entm't, Inc. v. CBS Corp.*, 908 F.3d 405 (9th Cir. 2018) ("The business records exception

only requires 'someone with knowledge' about the record-keeping, not necessarily an employee of the business or someone with knowledge of how the reports were made or maintained."); *United States v. Ray*, 930 F.2d 1368, 1370 (9th Cir. 1990); *Curley v. Wells Fargo & Co.*, 120 F. Supp. 3d 992, 998 (N.D. Cal. 2015).

Altogether, Miles meets the requisite standards to authenticate the exhibits attached to the Affidavit. Likewise, Miles holds the requisite personal knowledge to serve as a qualified witness under Rule 803(6) that can testify about Miles Bauer's record-keeping practices.

### 2. Plaintiff's Tender of the Superpriority Lien Amount

Plaintiff argues that its payment for nine-months of common assessments constituted a valid and unconditional tender, thus extinguishing the HOA's superpriority lien. (Pl.'s MSJ 6:10–9:10). In response, SFR argues that Plaintiff's tender was invalid because the letter accompanying the payment contained impermissible conditions. (SFR's Resp. 9:15–15:24).

Under NRS 116.3116, the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing the deed of trust. *See SFR Invs. Pool 1 v. U.S. Bank*, 334 P.3d 408, 414 (Nev. 2014). "[A] first deed of trust holder's unconditional tender of the superpriority amount due results in the buyer at foreclosure taking the property subject to the deed of trust." *Bank of Am., N.A. v. SFR Invs. Pool 1, LLC*, 427 P.3d 113, 116 (Nev. 2018) (en banc). "[T]he superpriority portion of an HOA lien includes only charges for maintenance and nuisance abatement, and nine months of unpaid assessments." *Id.* at 117. In addition to a full tender of the superpriority amount, "valid tender must be unconditional, or with conditions on which the tendering party has a right to insist." *Id.*

Here, the evidence indicates that on June 24, 2014, Miles Bauer, on behalf of Plaintiff, sent NAS a letter accompanied by a check for $315.00. (*See* Tender Letter, Ex. 3 to Miles Aff.). That is, pursuant to NAS's ledger identifying Borrower's delinquent payments, Plaintiff calculated the maximum for nine months of assessments. (*Id.*); (Borrower Account History

Report, Ex. 2 to Miles Aff.). The accounting ledger confirms Plaintiff's calculation and does not reveal any nuisance and abatement charges. (*See id.*). Thus, Plaintiff's tender of the $315.00 check to NAS undisputedly met the amount of HOA's superpriority lien, and NAS received the check before rejecting it. (*See* Tender Letter, Exs. 3, 4 to Miles Aff.); (NAS's Confirmation of Receipt, Ex. 4 to Miles Aff.); (Screenshot of Case Management Note, Ex. 5 to Miles Aff.).

SFR and HOA, in turn, have failed to produce competing evidence showing that Plaintiff miscalculated the superpriority lien amount, the lien included nuisance and abatement charges, or that Plaintiff never delivered the tender letter and accompanying check. The remaining question, therefore, is whether Plaintiff's tender was either unconditional or with conditions on which Plaintiff had the right to insist.

Plaintiff's Tender Letter, in relevant part, contains the following language:

> Our client has authorized us to make payment to you in the amount of $315.00 to satisfy its obligations to the HOA as a holder of the first deed of trust against the property. Thus, enclosed you will find a cashier's check made out to NEVADA ASSOCIATION SERVICES in the sum of $315.00, which represents the maximum 9 months worth of delinquent assessments recoverable by an HOA against the first deed of trust lienholder. This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that BANA's financial obligations towards the HOA in regards to the real property located at 964 San Carlos Creek Lane have now been "paid in full."

(Tender Letter, Ex. 3 to Miles Aff.)

SFR argues there is a disputed issue of material fact as to the tender's validity because the tender letter is impermissibly conditional. (*See* SFR's Resp. 11:10–13). SFR asserts that acceptance of the check was improperly contingent upon agreement with the facts as stated in

the letter, including Plaintiff's legal interpretation that the check's amount represented payment in full. (*Id.* 13:3–15:24).

At the outset, the Court notes that one of the purportedly improper paragraphs in the tender letter is identical to the letter the Nevada Supreme Court deemed unconditional and otherwise valid.[2] Therefore, to the extent SFR assigns impropriety to language in that paragraph, the argument necessarily fails. Specifically, with respect to the provision that an endorsement would be construed as acceptance of the letter's facts, the Court incorporates the reasoning of the Nevada Supreme Court and finds this language constitutes a condition on which Plaintiff had the right to insist. *Bank of Am., NA.*, 427 P.3d at 117.

SFR argues that because the letter omits any reference to abatement charges and expressly notes that the check applies solely to nine months of HOA assessments, acceptance of the tender would force HOA to waive a portion of its superpriority lien. (SFR's Resp. 13:16–14:5). In this case, because there is no genuine dispute that maintenance and abatement charges were not incurred during the relevant time period, acceptance of the letter's facts in this regard would not force the association to waive a portion of its superpriority lien as SFR urges. Moreover, the Court rejects SFR's contention that accepting the letter would absolve Plaintiff of any future liability it may have to HOA. The Court is in accord with the Nevada Supreme Court that the letter's reference to "facts stated herein," immediately preceding the language about Plaintiff's obligations being "paid in full," can only be reasonably interpreted as applying to the underlying foreclosure proceeding. *See Sage Realty*, 2018 WL 6617730, at *1 ("The

---

[2] The tender letter before the Nevada Supreme Court contained the following paragraph:

> This is a non-negotiable amount and any endorsement of said cashier's check on your part, whether express or implied, will be strictly construed as an unconditional acceptance on your part of the facts stated herein and express agreement that [Bank of America]'s financial obligations towards the HOA in regards to the [property] have now been "paid in full."

*Bank of Am., NA.*, 427 P.3d at 118.

letter refers to 'the facts stated herein,' which can only be reasonably construed as contemplating the underlying foreclosure proceeding and not a future scenario in which BNYM might again need to cure a default as to the superpriority portion of the HOA's lien to protect its first deed of trust."); *Deutsche Bank Nat'l Tr. Co. v. Premier One Holdings, Inc.*, 431 P.3d 55 (Nev. 2018) (unpublished) (same); *Fiducial, LLC v. Bank of New York Mellon Corp.*, No. 71864, 2018 WL 6617727, at *2 (Nev. Dec. 11, 2018) (same).

Based upon the foregoing, the Court concludes that Plaintiff's tender satisfied HOA's superpriority lien and thus invalidated the ensuing sale to the extent it extinguished Plaintiff's DOT. While the sale remains intact, Plaintiff's DOT continues to encumber the Property and SFR's interest is subject to this encumbrance. Accordingly, Plaintiff's Motion for Summary Judgment, as to its quiet title claim, is granted.

### C. Standing to Enforce the DOT

To the extent SFR argues that Plaintiff lacks standing to enforce the DOT because it has not produced evidence that the promissory note was endorsed in Plaintiff's favor, the Court disagrees. SFR's reliance on *Edelstein*, which dealt with authority to foreclose, is misplaced. *See Edelstein v. Bank of New York Mellon*, 286 P.3d 249 (Nev. 2012). Rather than seeking authority to foreclose on the Property, Plaintiff seeks to quiet title in its favor. (Compl. ¶¶ 31–64). It is well established that an action to quiet title "may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action, for the purpose of determining such adverse claim." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013). Indeed, Plaintiff seeks to determine the viability of its interest against SFR through the DOT alone. Similarly, Plaintiff provides documentation showing its chain of title regarding that DOT. (Assignment Recorded, Ex. C to Pl.'s MSJ, ECF No. 55-3) (showing a transfer to "BAC Home Loans Servicing, LP FKA Countrywide Home

Loan Servicing, LP); (Cert. Merger, Ex. D to Pl.'s MSJ, ECF No. 55-4) (showing a merger of BAC Home Loans Servicing with Bank of America, N.A.).

Because SFR does not produce evidence to rebut the chain of title for the DOT in this case, there is no dispute of material fact about Plaintiff's assigned interest here. Plaintiff thus has articulated its chain of title, provided proper documentation, and has standing to pursue its quiet title claim. *See USROF IV Legal Title 2015-1 by U.S. Bank Nat'l Ass'n v. White Lake Ranch Ass'n*, No. 3:15-cv-00477-MMD-CBC, 2019 WL 539037, at *3 (D. Nev. Feb. 11, 2019) ("[T]he Court finds that as the holder of the DOT . . . [the holder] has standing to challenge the HOA Sale and to contend that the DOT has not been extinguished.").[3]

### D. Borrower as a Necessary Party

SFR argues that Plaintiff should have joined the original borrowers to the suit because if the HOA sale is undone, title will be restored to the borrowers. (SFR's MTD 5:17–24, ECF No. 48).

Under Federal Rule of Civil Procedure 19(a)(1)(B)(i), a "person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if ... that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest." If such a person "has not been joined as required, the court must order that the person be made a party." Fed. R. Civ. P. 19(a)(2).

As discussed above, the Court finds that Plaintiff is entitled to judgment as a matter of law that the deed of trust still encumbers the property. In making this ruling, the Court declines to set aside the HOA sale. As the sale remains intact, joinder of the former homeowner is unnecessary to this action.

---

[3] The Court has considered SFR's remaining arguments and rejects them for lack of merit.

### E. Plaintiff's Wrongful Foreclosure and Injunctive Relief Claims

In its prayer for relief, Plaintiff requests primarily an order declaring that "SFR purchased the property subject to [Plaintiff's] senior deed of trust." (*See* Compl. 15:14–16). The other relief requested—with the exception of injunctive relief—is phrased in the alternative. (*See id.* 15:17–21). Therefore, because the Court grants summary judgment for Plaintiff on its quiet title claim, Plaintiff has received the relief it requested. The Court accordingly dismisses Plaintiff's wrongful foreclosure claim as moot. As to Plaintiff's request for a preliminary injunction pending a determination by the Court concerning the parties' respective rights and interests, the Court's grant of summary judgment for Plaintiff moots this claim and is therefore dismissed.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 55), is **GRANTED** pursuant to the foregoing.

**IT IS FURTHER ORDERED** that SFR's Motion for Summary Judgment, (ECF No. 54), is **DENIED.**

**IT IS FURTHER ORDERED** that SFR's Motion to Dismiss, (ECF No. 48), is **DENIED.**

The Clerk of Court shall enter judgment accordingly and close the case.

**DATED** this __30__ day of March, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court